IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN R., SALLY H., and CHARLES R.,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED BEHAVIORAL HEALTH and THE GUARDIAN CHOICE PLUS POS PLAN FOR HOME OFFICE EMPLOYEES,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:18-cv-35-TC |

Plaintiffs John R. and Sally H. are the parents of Plaintiff Charles R. (Charlie). They all seek recovery of expenses incurred when Charlie, who as a child and teenager suffered from serious mental health, behavioral, and substance abuse disorders, received treatment for those disorders in 2014 and 2015 at three different facilities. At the time, Charlie was a minor and beneficiary of the employee welfare benefits plan provided to his father. His parents, seeking recovery of expenses incurred as a result of Charlie's treatment, submitted benefits claims to Defendants United Behavioral Health and The Guardian Choice Plus POS Plan for Home Office Employees. After those claims were denied, Plaintiffs brought this suit under ERISA[1] and the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA or "Parity Act").[2]

---

[1] ERISA stands for the Employee Retirement Income Security Act of 1974.

[2] Their second cause of action refers not only to the Parity Act but also to the Patient Protection and Affordable Care Act of 2010 (ACA). (See Am. Compl. ¶¶ 84, 90, ECF No. 20.)

1

The Defendants have filed a motion under Rule 12(b)(6) to partially dismiss the Amended Complaint (Complaint).[3] First they assert that the parents lack statutory and constitutional standing to bring the ERISA and the Parity Act claims. Second, they seek dismissal of the Parity Act claim because the Complaint's threadbare and conclusory allegations do not satisfy the notice pleading requirement of Rule 8 and are internally inconsistent with UBH's stated reasons for denying the claims.

For the reasons set forth below, the Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. Specifically, the court finds that John R. has standing but that Sally H. does not. Additionally, Plaintiffs' Parity Act claim does not meet the minimum pleading requirements under Rule 8 and must be dismissed.[4]

## FACTUAL ALLEGATIONS

In 2014 and 2015, Charlie received treatment for mental health, behavioral, and substance abuse problems at three different facilities. In 2014, he spent approximately two-and-a-half months at Summit Achievement (Summit) in the State of Maine. On January 12, 2015, he was admitted to the Second Nature Blue Ridge Wilderness Therapy Program ("Second Nature") located in the State of Georgia, where he stayed for approximately two-and-a-half months before being discharged on March 25, 2015. Three days later, on March 28, 2015, he was admitted to In Balance Ranch Academy ("In Balance"), a therapeutic boarding school in Arizona, where he lived and was treated for over a year. (See Am. Compl. ¶¶ 64 (Charlie was admitted on March 28, 2015), 66–68 (Plaintiffs submitted claims for coverage of treatment costs incurred at In

---

[3] Defendants' Motion does not challenge the Plaintiffs' ERISA claim.

[4] Although Plaintiffs contend they should be allowed to file their proposed second amended complaint (attached to their opposition brief) to remedy any perceived pleading deficiencies, the court finds that their proposed changes do not fix the problems with their claims and so allowing them to amend would be futile.

2

Balance for services provided between March 28, 2015, and April 30, 2016, and for services provided "from May 1, 2016, forward"), ECF No. 20.)

Plaintiffs incurred more than $248,000 in medical expenses for Charlie's treatment. (Id. ¶ 91.)

During the time Charlie received treatment, he was the beneficiary of his father's employee welfare benefits plan, referred to as "Guardian Choice Plus POS Plan for Home Office Employees" ("Guardian" or, alternatively, "the Plan"). The requirements of the Plan, which is governed by ERISA, are outlined in the Guardian Summary Plan Description ("Guardian SPD"). Plaintiff Sally H., who is Charlie's mother, was also a beneficiary of the Plan, but she is not a Plan participant.

**Plaintiffs' Benefits Claims**

Although non-party UnitedHealthcare (United) administers claims submitted to the Plan, United has delegated determination of mental health benefit claims to Defendant United Behavioral Health (UBH), the Plan's Mental Health/Substance Use Disorder Administrator. Plaintiffs submitted all of their claims to UBH.

### Claims for Treatment at Summit

UBH denied Plaintiffs' claims for benefits covering Charlie's treatment at Summit for the following reason: "Your claim was not submitted within the time frame specified in your plan documents or contract. Consequently, we are unable to consider it for payment." (Id. ¶ 23.) Plaintiffs appealed that denial, which was affirmed because "claims for services rendered by non-participating providers have a timely filing limit of one year from the date(s) from the dates of service[.]" (Id. ¶ 27.)

**Claims for Treatment at Second Nature**

Plaintiffs submitted claims for recovery of expenses incurred during Charlie's wilderness therapy treatment at Second Nature. UBH's denial of the claims said Charlie "did not require 24-hour per day monitoring and [he] could have been treated at a lower level of care." (Id. ¶ 47.) Plaintiffs' administrative appeals of the denial were unsuccessful. On appeal, UBH cited "a lack of medical necessity 'for the substance use residential level of care.'" (Id. ¶ 55.) According to Plaintiffs, "UBH explained that wilderness programs do not have adequate medical oversight 'and are geared toward experiential and psychosocial growth experiences rather than medically directed treatment.'" (Id. ¶ 56.) They filed an external appeal, but the external reviewer upheld the denial, "stating that the services provided were not medically necessary and that the requested services were not in accordance with generally accepted standards of medical practice 'in terms of site and duration and intensity.'" (Id. ¶ 63.) The external reviewer "concluded that Charlie could have been treated at a lower level of care." (Id.)

**Claims for Treatment at In Balance**

To recover payments for Charlie's treatment at In Balance, Plaintiffs submitted three sets of claims covering three different treatment periods. The first set of claims (for services between March 28, 2015, and September 30, 2015) was denied because the claims were not timely filed. UBH denied the second set of claims (covering treatment between October 1, 2015, and April 30, 2016) because it was not notified of Charlie's admission and treatment at In Balance.[5] (See id. ¶¶ 69–78.)

---

[5] According to the Complaint, the third set of claims was still in process, so it does not discuss whether those claims were denied, or, if they were denied, the basis for such denial. (See Am. Compl. ¶ 68.)

On appeal, UBH upheld the denial, providing what Plaintiffs characterize as a "different rationale" for denial. UBH said its "review of the claim in question reveals that In Balance Counseling is not contracted for the service of supervised/transitional living, revenue code 1003." (Id. ¶ 72.) Plaintiffs, in the next level of appeal, contended that "Charlie's claims were billed in error[.]" (Id. ¶ 73.) They "explained" to the reviewing entity that "there were two separate entities involved in the case, In Balance Ranch, which 'provides mental health treatment services at an alternate level of care,' and In Balance Counseling, considered an outpatient level of care." (Id.) Despite the minor variations, all rationales were based on administrative issues, not a determination of medical necessity or other substantive reason concerning the Plan's scope of coverage.

**Terms of the Plan**

Generally speaking, the Guardian SPD provides Benefits for Covered Health Services where "Medically Necessary." This standard applies regardless of whether the services are for medical/surgical care or behavioral healthcare. (See Guardian SPD at 102 (defining "Covered Health Services"), attached as Ex. A to Decl. of Julie Bullock, ECF No. 22.)

The Plan covers services "provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, Mental Illness, substance use disorder, condition, disease or its symptoms[.]" (Id. at 105.) The covered services must be "Medically Necessary," which the Guardian SPD defines as services that are (1) "in accordance with *Generally Accepted Standards of Medical Practice*" as defined in the SPD, (2) "clinically appropriate . . . and considered effective for your Sickness, Injury, Mental Illness, substance use disorder disease or its symptoms"; (3) "not mainly for your convenience or that of your doctor or other health care provider"; and (4) "not more costly than an alternative drug, service(s) or supply that is at least

5

as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your Sickness, Injury, disease or symptoms." (Id. (italics in original).)

The Guardian SPD also provides that Benefits for Mental Health/Substance Abuse are generally available on an inpatient and outpatient basis where such services are "necessary to protect your physical health and well-being." (Id. at 36–37.) Specifically, the Guardian SPD requires authorization and also notes that

> Mental Health Services must be provided by or under the direction of the Mental Health/Substance Abuse Designee (contact Personal Health Support). Referral[s] to a Mental Health provider are at the sole discretion of the Mental Health/Substance Abuse Designee, who is responsible for coordinating all care.

(Id. at 36.) Further, the Guardian SPD states that the "Mental Health/Substance Abuse Designee, who will arrange for the services, will determine the appropriate setting for the treatment." (Id.) The Guardian SPD excludes coverage for treatment of a Mental Health/Substance Use Disorder where such services "in the reasonable judgment of the Mental Health/Substance Use Disorder Administrator, are . . . [n]ot consistent with generally accepted standards of medical practice for the treatment of such conditions…." (in other words, not medically necessary). (Id. at 55–56.)

## PROCEDURAL BACKGROUND

After Defendants filed their motion to dismiss, Plaintiffs filed an opposition brief in which they pared down their MHPAEA claim, as discussed below.[6] In addition, they attached to their opposition a copy of a proposed Second Amended Complaint which they use in an attempt to remedy the Amended Complaint's shortcomings. According to the Plaintiffs, if the court is inclined to dismiss the MHPAEA claim for pleading deficiencies, "it should allow the R. Family

---

[6] Plaintiffs say that Defendants' motion ignores the ACA claim. But Plaintiffs do not articulate a separate cause of action under the ACA. Regardless, even if one can read the complaint to bring a separate claim under ACA, that claim fares no better than the MHPAEA claim, as the court explains below.

to further amend their Amended Complaint unless it is clear that any amendment would be futile." (Pls.' Opp'n to Mot. Dismiss at 3, ECF No. 23.)

Because Plaintiffs did not file a formal motion requesting leave to file the proposed Second Amended Complaint (as Rule 15(a) requires), they did not follow the necessary procedures to obtain court consideration of their request to amend. Indeed, Defendants characterize the "Second Amended Complaint" upon which Plaintiffs rely in their opposition to the motion to dismiss as "a procedural nullity." (Reply Supp. Mot. Dismiss at 1 n.1, ECF No. 26-1.)

But, in an effort to promote judicial efficiency, and because Defendants have been able to address the new allegations (albeit on a limited basis) through their Reply, the court has reviewed the validity of the proposed amendments. Those amendments are very minor, and do not cure the Amended Complaint's deficiencies, which are outlined below. Accordingly, allowing Plaintiffs to amend would be futile.

## ANALYSIS

### Standard of Review

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the plaintiff fails to satisfy this "notice pleading" requirement, he may be subject to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under that rule, a party who files a motion to dismiss is entitled to dismissal if the complaint fails to state a claim upon which relief can be granted. Id.

When reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded factual allegations as true and construe them in a light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The court must also draw all reasonable inferences in favor of the

plaintiff.  Ward v. Utah, 321 F.3d 1263, 1266 (10th Cir. 2003).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  As the United States Supreme Court emphasized in Iqbal, "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.

To avoid dismissal, the plaintiff must "state a claim to relief that is plausible on its face."  Id. at 678.  A facially-plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.  If the plaintiff does not satisfy that standard, the court must dismiss the complaint for failure to state a cause of action under Rule 12(b)(6).

When evaluating a Rule 12(b)(6) motion, the court "may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference."  Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 n.22 (10th Cir. 2017) (internal citations and quotation marks omitted).  The same rule applies when a document "is referred to in the complaint and is central to the plaintiff's claim[.]"  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  In this case, Plaintiffs' allegations are expressly based on the terms of John R.'s Plan.  (See Am. Compl. ¶¶ 88–90.)  Because the authenticity and contents of the plan document are not disputed, the court will consider not only the allegations in the complaint but also the terms of the Plan.

**Standing**

Defendants contend that John R. and Sally H. lack statutory and constitutional standing to assert the claims alleged in the Complaint. They argue that the mother and father "are only seeking to enforce their son Charles R.'s right to benefits under the Plan," and do not assert individual claims. (Mot. Dismiss Am. Compl. at 16, ECF No. 21.)

Because the court is dismissing the MHPAEA claim, the court limits its discussion to whether Plaintiffs have standing to bring the first cause of action seeking recovery of benefits for Charlie's treatment. In addition, because Plaintiffs, at the hearing, agreed to remove Sally H. from the case, the court only addresses John R.'s standing to bring a claim under ERISA.

ERISA grants statutory standing to a participant or beneficiary seeking to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B). John R. is a plan participant. Defendants contend he is not enforcing his rights under the Plan but rather is asking for recovery of benefits that are due to Charlie alone. They also point out that although Charlie was a minor at the time of treatment, he is now an adult beneficiary who can assert (indeed is asserting), his own rights under the Plan. They further maintain that John R. is essentially bringing a claim for compensatory damages because he paid the money for Charlie's treatment. Compensatory damages, which traditionally offer legal, rather than equitable relief, are not available under ERISA. See Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993); Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d 1182, 1185 ("'Nowhere does [ERISA] allow consequential or punitive damages. Damages are limited to the recovery of 'benefits due … under the terms of the plan.'") (quoting Conover v. Aetna US Health Care, Inc., 320 F.3d 1076, 1080 (10th Cir. 2003)).

But the fact remains that John R., not Charlie, incurred costs for Charlie's treatment. Those costs, he contends, should have been paid by UBH because Charlie's treatment was covered by the Plan. Indeed, John R. was contractually obligated to the providers to pay $248,000 for Charlie's treatment. (See Am. Compl. ¶ 91; Proposed Second Am. Compl. ¶ 3, ECF No. 23-1.) Regardless, if Plaintiffs succeed on the first cause of action, they would obtain a single remedy: payment of the $248,000.

John R. also has constitutional standing. To establish such standing, a plaintiff must show three things: (1) he suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of," which means the injury is fairly traceable to the defendant; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). He has satisfied those elements. First, he alleges he has incurred debt based on the improper denial of his son's benefits. That is an injury-in-fact. Second, he is left holding the bill because Defendants did not pay for the treatment. That connects his injury to the Defendants. And, finally, if the court were to hold that Defendants should have covered Charlie's treatment, the payment of those benefits would redress his injury.

For these reasons, the court holds that John R. has standing to bring the first cause of action against the Defendants.

**Claim for Violation of MHPAEA[7]**

The Parity Act provides that a group health plan providing coverage for medical and surgical benefits as well as coverage for behavioral health (mental health or substance use disorders), must "ensure" that limitations on behavioral health treatment "are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan," and that "no separate treatment limitations" apply only to behavioral health benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). Treatment limitations may be either quantitative or non-quantitative. 29 C.F.R. § 2590.712(a). And, according to an implementing regulation, non-quantitative limitations may encompass limitations "as written and in operation." 29 C.F.R. § 2590.712(c)(4)(i).

The court first notes that although Plaintiffs originally asserted a violation of MHPAEA for UBH's denial of benefits for treatment at all three facilities, they have since limited their MHPAEA claim to UBH's denial of benefits for Charlie's treatment at two of those facilities: Second Nature and In Balance. (See Opp'n at 6 ("the R. Family withdraws its MHPAEA claim as to Charlie's treatment at Summit").)

Plaintiffs characterize Charlie's treatment as "intermediate, sub-acute mental health treatment, namely wilderness therapy [at Second Nature] and transitional living [at In Balance]" and allege that UBH treated that coverage disparately from coverage the Plan allows for "intermediate, sub-acute treatment for medical/surgical conditions." (Id. at 3.) They analogize the treatment Charlie received to the following treatment covered by the Plan: "Comparable

---

[7] At the hearing on the motion, Plaintiffs essentially withdrew their ACA claim and said they would take it out of their proposed second amended complaint. But even if they did not make such a concession, the claim does not survive Defendants' Rule 12(b)(6) motion. Just as their MHPAEA claim is conclusory, Plaintiffs' allegations referring to the ACA are equally conclusory and unsupported by any facts.

11

benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for Charlie's treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care[8], and rehabilitation facilities." (Am. Compl. ¶ 88.) Then they appear to allege a disparity by saying that, "[f]or none of these types of treatment does UBH exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner UBH excluded coverage of treatment for Charlie at … Second Nature or In Balance." (Id.) Plaintiffs' phrase "other criteria" is not specific enough, even in light of the allegations of UBH's rationales for denial of the claims, to offer support for the MHPAEA claim. As for "geographic location," "facility type," and "provider specialty," Plaintiffs do not elaborate. They simply paraphrase the statute and its implementing regulations. (See id. ¶¶ 83, 85–87, 89.) More importantly, even a favorable reading of the limited factual allegations throughout the Complaint does not suggest that UBH denied Charlie's claims based on the geographic location of either Second Nature or In Balance. The same can be said for "facility type" or "provider specialty."

UBH denied Charlie's In Balance claims based on an administrative (i.e., non-substantive) limitation (i.e., timeliness, notice, and, according to Plaintiffs, a billing error). Only Charlie's treatment at Second Nature was denied on substantive grounds. And there, UBH determined that the treatment was not medically necessary, a conclusion that considered the individual circumstances of Charlie, his condition, and his treatment.

In denying the claim for treatment at Second Nature, UBH concluded that Charlie "did not require 24-hour per day monitoring and [he] could have been treated at a lower level of

---

[8] The court does not understand how inpatient hospice care is at all analogous to a wilderness therapy program or residential mental health treatment program.

12

care." (Id. ¶ 47.) Later, rejecting Plaintiffs' subsequent appeal, UBH cited "a lack of medical necessity 'for the substance use residential level of care'" and explained that "wilderness programs do not have adequate medical oversight 'and are geared toward experiential and psychosocial growth experiences rather than medically directed treatment.'" (Id. ¶¶ 55–56.) After filing an external appeal, Plaintiffs received a further denial. The external reviewer who affirmed UBH's decision stated that "the services provided were not medically necessary and that the requested services were not in accordance with generally accepted standards of medical practice 'in terms of site and duration and intensity.'" (Id. ¶ 63.) That reviewer "concluded that Charlie could have been treated at a lower level of care." (Id.)

The question of whether Charlie's treatment was medically necessary is properly addressed under Plaintiffs' ERISA claim. His MHPAEA claim is not viable because he does not allege any plausible disparity between the coverage he received and coverage the Plan offers in the medical/surgical context.

Plaintiffs alternatively assert that UBH imposed non-quantitative treatment limitations on Charlie's claims "through unprincipled application of terms that do not on their face violate MHPAEA's parity requirements." (Opp'n at 5.) They then imply that, in Charlie's case, UBH could, and did, achieve "[m]ore stringent application of mental health benefits … through systematic application of processes, strategies, and standards which result in providing disparate benefits, although the plan, as written, does not contradict MHPAEA." (Id.) But nowhere in their complaint do they provide allegations shedding light on this conclusory statement.

Instead, they suggest that in order to actually state a claim, they need discovery. "[T]o flesh out the full extent of MHPAEA violation may often require discovery of additional facts." (Id. at 3.) Plaintiffs do not articulate any basis supporting their request. Instead, they offer an

unfounded assertion. They are essentially asking for leave to conduct a fishing expedition, which the court will not allow.

As Defendants note, "the Plan provides coverage for all mental health treatment modalities accepted as the standard of care for treatment of behavioral health and substance use disorders." (Defs.' Reply at 4.) UBH applies the medical-necessity requirement to determine coverage, whether it be for mental health and addiction treatment or treatment of disorders arising in the medical/surgical context. Applying a medical necessity requirement to all types of health care avoids disparity of treatment. If Plaintiffs are dissatisfied with UBH's medical necessity determination or the standard of care UBH applied when it evaluated Charlie's treatment, they have a more appropriate avenue of relief: their first cause of action under ERISA.

## ORDER

For the foregoing reasons, Defendants' Motion to Dismiss Amended Complaint (ECF No. 21) is GRANTED IN PART AND DENIED IN PART. Specifically, Defendants' request to dismiss Sally H. is GRANTED because she does not have standing to bring the claims. But their request to dismiss Plaintiff John R. is DENIED because he does have standing. As for Plaintiffs' Second Cause of Action, brought under MHPAEA, that claim is DISMISSED WITH PREJUDICE.[9]

DATED this 22nd day of November, 2019.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge

---

[9] The claim is dismissed with prejudice because the Plaintiffs' proposed second amended complaint does not satisfy the Rule 8 pleading standards and so allowing the proposed amendment to be filed would be futile.